UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA R., an individual; KARI R., an individual; VICKY P., an individual; NATASHA P., an individual,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WILLIAM NULICK, an individual; TULARE COUNTY SHERIFF, a California governmental entity; COUNTY OF TULARE, a California governmental entity; and DOES 1 to 50, inclusive,<br><br>　　　　Defendants. | No. 1:15-cv-01378-JAM-EPG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE** |

Tulare County Sheriff's Deputy and defendant William Nulick ("Nulick") allegedly exploited his position as a police officer by sexually assaulting plaintiffs Maria R. ("Maria"), Kari R. ("Kari"), Vicky P. ("Vicky"), and Natasha P. ("Natasha") (collectively "Plaintiffs").  At issue in this motion is whether Nulick's employers, defendants County of Tulare ("Tulare") and Tulare County Sheriff ("Sheriff") (collectively "Defendants") are vicariously liable for Nulick's abuse and subsequent efforts to

1

cover-up his wrongdoing. Defendants seek dismissal of Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b) and 12(f). For the reasons stated below, the Court grants in part and denies in part the motion.[1]

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The Court takes the following facts as true for purposes of this motion.

Defendants engaged in "continuous, ongoing and systematic abuse of a targeted class of persons [Plaintiffs] . . . who were all sexually violated and repeatedly threatened by Defendants." Compl. ¶ 15. Nulick sexually assaulted Plaintiffs during the course of his duties as a Tulare County Sheriff and the Sheriff's Department engaged in an "intentional cover-up designed to prevent Plaintiffs and other victims from feeling secure enough to come forward in their community and bring a lawsuit for the wrongdoings." Id. ¶ 44. Plaintiffs are still being "harassed, followed, and intimidated" by Defendants. Id. ¶ 18.

Vicky claims that Nulick forced her to watch pornography with him when Nulick came to Vicky's home to look for her husband. Id. ¶ 16. Additionally, in April 2013, Natasha and Vicky were pulled over by Nulick for a routine traffic stop. Id. ¶ 19. Nulick separately took Natasha and Vicky to the back of their car and to the right of Nulick's car and conducted a pat-down search during which he sexually groped both Plaintiffs'

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for April 5, 2016.

2

vaginas. Id. ¶ 22. Following the incident, Nulick harassed Natasha and Vicky when he saw them on the street and by repeatedly parking outside their homes. Id. ¶ 24.

On or about July 2013, Nulick executed an arrest warrant for Kari without probable cause or special permission just after midnight and outside the normal hours for executing an arrest warrant. Id. ¶¶ 26-27. Kari, who was asleep naked in her bedroom, was woken by Nulick, who demanded that she come down to the station. Id. ¶¶ 27-28. Nulick refused to hand Kari clothing so she could get dressed or to turn around to give Kari privacy while she dressed. Id. ¶ 29. Kari was forced to expose her naked body in front of Nulick, who watched her get dressed while biting his lip. Id. After Kari was dressed, Nulick conducted a pat-down where he pulled down Kari's bra and sexually groped her vagina with his palms and fingers. Id. ¶ 30.

Maria was driving on or about August 2013 with her boyfriend when she was pulled over by Nulick. Id. ¶ 31. Nulick took Maria to the back of her car and to the front right of Nulick's car. Id. ¶ 32. Nulick, without reasonable suspicion, then demanded that Maria pull down her dress and bra to expose her breasts so that he could look for hidden weapons or drugs. Id. ¶ 33. Nulick then sexually groped Maria's breasts, buttocks, and vagina. Id. ¶ 35. After Nulick groped Maria, he then told Maria that he knew where she lived and propositioned that they have sex. Id. ¶ 36. Maria asked what he was going to do and asked for Nulick's card. Id. ¶ 37. Nulick refused and let her go. Id.

Following these incidents, Nulick and other officers engaged

3

in intimidation tactics to cover up Nulick's actions. Id. ¶ 39. For example, after Nulick heard that Natasha and Vicky were questioning the legality of his pat downs, Nulick "barged into the front door" of Natasha's house and verbally threatened that Natasha and Vicky should remain quiet about how Nulick sexually assaulted them. Id. ¶ 40. Nulick also parked outside of Plaintiffs' homes and shined a spotlight into the windows of Natasha, Vicky, and Kari's homes to let them know he was there. Id. ¶¶ 16, 41.

Following Nulick's arrest in October 2013, the Sheriff's department continued to "conceal and cover-up its knowledge concerning past complaints made against Nulick." Id. ¶ 43. Sheriff's deputies have also "driven by Plaintiffs' homes for the sole purpose of intimidating and harassing Plaintiffs." Id. ¶ 44. Plaintiffs' safety and security were threatened by Defendants even up to the time Plaintiffs filed the complaint. Id. ¶ 48.

In light of these intimidation efforts, Plaintiffs were fearful to report Nulick's actions. Id. ¶ 49. Defendants were constantly around Plaintiffs, making it difficult for Plaintiffs to report Defendants' wrongdoing. Id. ¶ 50. It was only recently that Plaintiffs, after meeting with counsel and learning of other victims, felt safe enough "to share their stories of sexual violation and departmental corruption." Id. ¶ 46.

Plaintiffs' complaint contains the following twelve causes of action: (1) assault; (2) battery; (3) sexual battery; (4) false imprisonment; (5) intentional infliction of emotional distress ("IIED"); (6) violation of civil rights 42 U.S.C. § 1983

("Section 1983"); (7) intentional violation of civil rights – Monell; (8) violations of civil code § 52.1; (9) violations of the Unruh Act; (10) negligent hiring and supervision; (11) negligent training; and (12) negligent infliction of emotional distress ("NIED"). The first through ninth and the twelfth causes of action are brought against all defendants, while the tenth and eleventh causes of action are brought only against Sheriff and Tulare. Id. at 21-25.

Sheriff and Tulare (collectively "Defendants") now move to dismiss and/or strike Plaintiffs' complaint (Doc. #26). First, Defendants move to dismiss all causes of action pursuant to Rule 12(b)(6) because Plaintiffs failed to file the case within the applicable statute of limitations. Mot. at 5-10. Second, Defendants move to dismiss all causes of action because the claims are time-barred pursuant to the California Government Tort Claims Act ("Tort Claims Act"). Id. at 11. Third, Defendants move to dismiss the ninth cause of action for violation of the Unruh Act. Id. at 12-13. Fourth, Defendants move to dismiss the tenth and eleventh causes of action pursuant to Rule 12(b)(6) because there is no statutory basis for these claims or, alternatively, to strike one of the two causes of action pursuant to Rule 12(f) because they are duplicative. Id. at 13-14. Fifth, Defendants seek dismissal of the twelfth cause of action for failure to state a claim upon which relief can be granted. Id. at 14-15. Plaintiffs oppose the motion in its entirety (Doc. #27).

II.   OPINION

A.   Analysis

1.   Statute of Limitations

Defendants move to dismiss the entire case on the basis that the complaint was filed after the two-year statute of limitations expired on all of the causes of action. Mot. at 6-8. Defendants argue that Natasha's allegations that Nulick "verbally threatened and intimidated" her in the "months following" her attack are not actionable because they are conclusory and because verbal harassment is insufficient to state a cause of action under Section 1983. Id. at 7-8. Defendants further argue that the delayed discovery rule does not apply in this case because Plaintiffs "had reason to suspect a factual basis for a claim at the moment of the alleged physical batteries." Id. at 9. Lastly, Defendants argue that the Court should refuse to apply the equitable tolling doctrine because the alleged reasons for failing to file the complaint within the statute of limitations are "bare assertions" that do not specify "what specific statements or acts constituted the threats to their safety and security." Id. at 9-10.

In opposition, Plaintiffs argue that they have sufficiently alleged that Defendants engaged in a "pattern of systematic and continuous abuse preventing [Plaintiffs'] ability to come forward" and assert their claims against the Defendants. Opp. at 3. Plaintiffs assert that it was not until May 2015 when "they felt safe coming forward and learned Defendants could be responsible for Nulick and Defendants' agents/employees' conduct." Id. Thus, the delayed discovery rule should apply and

6

1  the date of accrual should be May 2015.  Id. at 4.
2  Alternatively, Plaintiffs argue that the statute of limitations
3  should be equitably tolled given that intimidation was used to
4  prevent Plaintiffs from filing their claims.  Id. at 5-6.
5       In civil rights cases such as this one, state law determines
6  the length of the statute of limitations period and federal law
7  determines when a claim accrues.  Lukovsky v. City & Cty. of San
8  Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008).  "Accrual is the
9  date on which the statute of limitations begins to run; under
10 federal law, a claim accrues when the plaintiff knows or has
11 reason to know of the injury which is the basis of the action."
12 Id.  Defendants allege, and Plaintiffs do not contest, that the
13 applicable statute of limitations for all of the claims in this
14 case is two years.  Since the Complaint was filed on September 9,
15 2015, the date of accrual must be after September 9, 2013, in
16 order for the claims to survive Defendants' challenge.
17      Though Defendants are correct that some instances of
18 Nulick's alleged sexual assaults occurred before September 9,
19 2013, the Complaint also alleges significant and different
20 misconduct after this alleged abuse.  For example, Natasha
21 alleges that Nulick "in the months following" the assault on her
22 barged into her door and threatened her.  Compl. ¶ 40.  All of
23 the Plaintiffs allege that Nulick harassed them on the street
24 after the assaults and would park outside their homes.  Id. ¶ 41.
25 Even after Nulick's arrest in October 2013, Defendants allegedly
26 undertook efforts to cover up Nulick's actions and to intimidate
27 Plaintiffs into dropping their lawsuit.  Id. ¶¶ 43-44.
28 Plaintiffs specifically allege that even up until the date of

7

filing the Complaint, "Defendants would continue to prey on Plaintiffs and threatened their safety and security." Id. ¶ 48. Read as a whole, the Complaint clearly alleges plausible wrongdoing that accrued after September 9, 2013.

Defendants argue that the alleged efforts by County to conceal and cover up Nulick's conduct are not actionable under Section 1983 because Plaintiffs failed to allege that they were deprived of a right. Mot. at 8. Defendants cite two Seventh Circuit cases for the proposition that a Section 1983 claim requires allegations of a conspiracy and a deprivation of rights. Id. While these cases are not binding on this Court, even if they were, the Court finds that Plaintiffs have met their burden of alleging that they were deprived of a constitutional right. Plaintiffs allege that "Defendants were acting under color of law and authority in violating Plaintiffs' constitutional rights . . . under the Fourth Amendment." Compl. ¶ 98. Plaintiffs also specifically allege that Defendants violated their Fourth Amendment rights to be free from unreasonable searches and seizures when Defendants "intentionally intruded within Plaintiffs' intimate space by means of improper and unwanted touching and forcible sexual assault in the absence of probable cause." Id. ¶ 102. These allegations meet Defendants' proposed requirement that Plaintiffs plead that they were deprived of their rights in order to raise a plausible Section 1983 claim. For these reasons, Defendants' motion to dismiss based on Plaintiffs' alleged failure to abide by the applicable statute of limitations is denied.

2.  <u>Government Claims Act</u>

Defendants separately move to dismiss all of Plaintiffs' state law causes of actions on the basis that Plaintiffs did not present their claims to Defendants within six months of the time the cause of action accrued, as is required by the Government Claims Act.  Mot. at 11; <u>see</u> Cal. Gov't Code § 911.2.  Plaintiffs argue that the delayed discovery rule applies and that their claims were appropriately submitted within six months of the time that Plaintiffs discovered their causes of action.  Opp. at 4.

Plaintiffs have pleaded that they properly complied with the Government Claims Act.  Paragraph 54 of the complaint clearly states that "Plaintiffs timely served Defendants with a claim for damages pursuant to Government Code Section 910 on June 5, 2015.  A response was received by risk management for Defendants returning them without action."  Compl. ¶ 54.  While all of the causes of action may have accrued prior to six months before June 5, 2015, this Court cannot reach such a conclusion without further factual development.  At this stage of the proceedings the Court is precluded from engaging in such factual development and, instead, must assume that all allegations made in the complaint are true, i.e., Plaintiffs only bear the responsibility to plead a plausible claim.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,570 (2007) (A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face.").  Plaintiffs have met this burden, and the Court therefore denies Defendants' motion to dismiss the state law claims due to an alleged failure to comply with the Government Claims Act.

### 3. Unruh Act

Plaintiffs' ninth cause of action for violations of the Unruh Act alleges that Defendants "denied full and equal accommodations, advantages, facilities, privileges and/or services to Plaintiffs" because of Plaintiffs' "sex, race, ancestry, and/or national origin." Compl. ¶¶ 127-128. Defendants seek dismissal of this claim for two reasons. First, Defendants argue that they cannot be liable under the Unruh Act because that law applies only to "business establishments" and Sheriff and Tulare are not business establishments. Mot. at 12-13. Second, Defendants argue that Plaintiffs fail to allege "any conduct preventing [them] from accessing public accommodations," which is also required by the Unruh Act. Id. at 13. Plaintiffs argue in their opposition that Nulick was a "member of an establishment" that discriminated against them based on their sex in a way that denied them equal accommodations. Opp. at 7.

The Unruh Act entitles all individuals to "full and equal accommodations, advantages, facilities, privileges, or services *in* all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b) (emphasis added). Whether and when public entities are covered by the Unruh Act is well-litigated.

Some courts have exempted public entities from Unruh Act liability. However, these cases do not stand for the categorical rule proposed by Defendants that "public entities are not considered business entities under the Act." Mot. at 5. The cases cited by Defendants only deal with state prisons or legislative acts, not actions taken by counties or law

enforcement agencies.  See, e.g., Qualified Patients Ass'n v. City of Anaheim, 187 Cal.App.4th 734, 765 (2010) ("Because the terms of the Unruh Act expressly apply to business establishments, we see no room for its application to the city's legislative action here."); Carter v. City of Los Angeles, 224 Cal.App.4th 808, 825 (2014) ("A state prison is not a business establishment for purposes of the act unless it engages in behavior involving sufficient businesslike attributes."); Taormina v. Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996) (stating that "a prison does not qualify as a business entity under Cal. Civ. Code section 51"); Gaston v. Colio, 883 F. Supp. 508 (S.D. Cal. 1995) ("[P]laintiffs cite no authority, nor any reasonable argument, that a state prison qualifies as a 'business establishment' for the purposes of the statute."). Defendants have provided the Court with no cases that are directly on point to the case presently before the Court.

A more compelling analysis can be found in Gibson v. Cty. of Riverside, 181 F. Supp. 2d 1057, 1090 (C.D. Cal. 2002), in which the District Court concluded that "persons and entities who are not themselves business establishments are subject to" the Unruh Act.  The court pointed out that the text of the Unruh Act clearly states that discrimination is barred "*in* all business establishments," not *by* all business establishments.  Id. (emphasis in original).  The court explained that "the provision only defines *who* is protected and where they shall be free from discrimination; it does not define--and limit--*what* persons are liable for such discrimination."  Id.  Moreover, as pointed out by the Gibson court, "*whoever* denies . . . or makes any

discrimination or distinction contrary to Section 51 . . . is liable." Id. (citing Cal. Civ. Code § 52(a) (emphasis in original)). And Section 52(c) describes how to bring a civil action whenever "*any* person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights hereby secured." Id. (citing Cal. Civ. Code § 52(c) (emphasis in original)). This statutory language supports the conclusion that "the term 'business establishments' must properly be interpreted in the broadest sense reasonably possible." Harrison v. City of Rancho Mirage, 243 Cal.App.4th 162, 173 (2015) (citing Curran v. Mount Diablo Council of the Boy Scouts, 17 Cal.4th 670, 689 (1998)).

Several courts have concluded that public entities may be held liable for Unruh Act violations even when they are not strictly considered to be business entities. For example, "public schools are business establishments within the meaning of the Unruh Act." Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369, 1388 (N.D. Cal. 1997); Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1123 (E.D. Cal. 2011) ("[S]everal federal courts have concluded that a plaintiff's allegation that a public school failed to adequately respond to his or her complaints of harassment gives rise to a cognizable claim under the Unruh Civil Rights Act. This Court follows the lead of those courts."). At least one lower state court has similarly concluded that a county's legislative action is also subject to the Unruh Act. Travis v. Cty. of Santa Cruz, 2007 WL 294132, at *14 (Cal. Ct. App. Feb. 2, 2007) ("In the circumstances here, which involve claims of discrimination in

housing, we believe the County's Ordinance is subject to the Unruh Act.").

In light of the compelling textual analysis of the <u>Gibson</u> court and the multiple cases finding that public entities may be liable for Unruh Act violations, this Court concludes that Defendants are not exempt from liability for violations of the Unruh Act based on Defendants' argument that "Plaintiffs do not allege conduct by any business establishment."  Mot. at 13.

The Court also disagrees with Defendants' argument that Plaintiffs were required but failed to adequately plead that they were subject to intentional discrimination in public accommodations.  Mot. at 13.  Plaintiffs specifically pleaded that they were denied "full and equal accommodations."  Compl. ¶ 127  and the Unruh Act does not simply bar discriminatory actions that prevent access to places of public accommodations.  The Act also establishes that all individuals are entitled to equal privileges and services.  Cal. Civ. Code § 51.  The allegations set forth in the complaint adequately describe multiple instances in which Defendants failed to provide equal services to Plaintiffs because of Plaintiffs' sex and/or ethnicity.  For all these reasons, the Court denies Defendants' motion to dismiss the Unruh Act cause of action.

      4.   <u>Negligent Hiring and Supervision; Negligent Training</u>

Plaintiffs' tenth cause of action for negligent hiring and supervision alleges that Defendants "failed to use reasonable care in hiring and supervising their employees . . . creat[ing] a dangerous environment for the general public, including

13

Plaintiffs." Compl. ¶ 137. Plaintiffs' eleventh cause of action for negligent training alleges that Defendants "neither had in place nor implemented an adequate system or procedure for investigating, training, and supervising employees . . . to prevent or remedy sexual abuse of its citizens." Id. ¶ 151.

Defendants argue that the tenth and eleventh causes of action should be dismissed because they are direct liability claims and "there is no statutory basis for declaring a public entity liable for negligence in its training, hiring, and supervision practices." Mot. at 13-14. Alternatively, Defendants move to strike one or both of the causes of action because they are duplicative. Id. at 14. Plaintiffs oppose the motion and argue that Defendants have an established duty to protect Plaintiffs and "to not expose them to the danger of sexual abuse and threats [or] intimidation by its employees." Opp. at 6. Plaintiffs contend that the only issue is whether this duty was breached, which is a factual issue that cannot be decided at this stage of the proceeding. Id.

California case law makes it clear that public entities are not directly liable for negligent hiring, supervision, or training. de Villers v. Cty. of San Diego, 156 Cal.App.4th 238, 252 (2007) ("We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices."); Shoval v. Sobzak, 2009 WL 2780155, at *4 (S.D. Cal. Aug. 31, 2009) ("California courts have repeatedly held that there is no statutory basis for direct claims against a public entity for negligent hiring and supervision practices."). Yet, as this Court pointed out in

Avila v. California, 2015 WL 6003289, at *6 (E.D. Cal. Oct. 14, 2015), "public entities can be held *vicariously* liable for the conduct of their employees when committed within the scope of their employment." (emphasis added).  California law specifically states that a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov. Code § 815.2.

Plaintiffs clearly allege that Defendants are vicariously liable pursuant to Section 815.2.  Compl. ¶¶ 134, 146 ("Plaintiffs also contend that Defendants are vicariously liable for the tortious sexual acts of Defendant Nulick flowing from his employment with Defendants.").  However, "in order to state a proper claim for negligent hiring or supervision" based on vicarious liability against a public entity, the plaintiff "must identify, if not join, the specific employee whose negligence is alleged and the specific negligent conduct underlying the claim." Avila, 2015 WL 6003289, at *6.  Plaintiffs have not satisfied this pleading requirement and the motion to dismiss the tenth and eleventh causes of action is granted.  Because Plaintiffs might be able to cure this defect, the Court dismisses these two causes of action without prejudice and with leave to amend.  Eminence Capital, LLC v. Aspeon Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

###### 5. Negligent Infliction of Emotional Distress

Defendants move to dismiss Plaintiffs' twelfth cause of action for negligent infliction of emotional distress ("NIED"), arguing that Plaintiffs have not adequately pleaded facts that would support either a bystander or non-bystander NIED claim. Mot. at 7-8. Plaintiffs oppose dismissal by arguing that an employer may be vicariously liable for the torts of its employees and that Plaintiffs have therefore pled sufficient facts to state an NIED claim. Opp. at 7.

NIED is not an independent tort in California, but a subset of negligence. Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992). As such, Plaintiffs must adequately plead the "traditional elements of duty, breach of duty, causation, and damages." Id.; Hall v. Apollo Grp., Inc., 2014 WL 4354420, at *6 (N.D. Cal. Sept. 2, 2014) ("The elements of a claim of negligent infliction of emotional distress are: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; and (3) the defendants' negligent conduct was a cause of the serious emotional distress").

There are two possible theories of liability in an NIED cause of action: the bystander theory and the direct victim theory. Burgess, 2 Cal.4th at 1071. Plaintiffs do not seek relief under a bystander theory because they allege that they were directly harmed, not harmed due to witnessing another's injury. Instead, Plaintiffs seek relief under the direct victim theory. In direct victim cases, a duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th

965, 985 (1993); <u>Burgess</u>, 2 Cal.4th at 1073 (liability for NIED can be imposed for "a breach of duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two"). Additionally, "public policy considerations are relevant in determining whether a particular plaintiff may recover damages for emotional distress." <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 885 (1991).

> [I]n considering the existence of 'duty' in a given case several factors require consideration including the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

<u>Id.</u> at 885-86 (1991) (citations omitted).

Here, Defendants seek dismissal of this cause of action solely for the reason that "Plaintiffs do not allege any . . . factual circumstances" that may give rise to a direct liability NIED claim, including the "negligent breach of a duty arising out of a preexisting relationship." Mot. at 14-15. However, Plaintiffs have clearly alleged that Defendants had a special relationship with Plaintiffs and that Nulick was responsible for maintaining this relationship. Compl. ¶ 159. Plaintiffs further allege that a duty may have been assumed by Defendants. <u>Id.</u> ¶¶ 159-161. Additionally, the <u>Christensen</u> factors weigh in favor of concluding that a duty may be imposed in this case. The alleged emotional harm caused by Defendants' actions was foreseeable and

17

certain, the alleged actions are morally blameworthy, and the possibility of preventing future harm is compelling.  For these reasons, the Court denies Defendants' motion to dismiss the NIED cause of action.

### III.   ORDER

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss the tenth and eleventh causes of action with leave to amend and DENIES Defendants' motion to dismiss the other causes of action.  If Plaintiffs desire to cure the defects identified in their tenth and/or eleventh causes of action, Plaintiffs' amended complaint must be filed within twenty days from the date of this Order.  Defendants' responsive pleadings are due within twenty days thereafter.  The Court advises that failure to cure the defects identified in this Order may be grounds for dismissal of those claims without further leave to amend.  <u>Dick v. Am. Home Mortgage Servicing, Inc.</u>, 2013 WL 5299180, at *6 (E.D. Cal. 2013).

Finally, Defendants' reply brief is two pages longer than the page limit allowed by the Court (Doc.#19-1). In accordance with this Order Re Filing Requirements, Defendants counsel is sanctioned in the amount of $100 which is to be paid within five days of the date of this Order.

IT IS SO ORDERED.

Dated: May 11, 2016

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE